

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE    JAN 1 2 2017

CHIEF JUSTICE

This opinion was filed for record

at 8:00am on Jan 12, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| FRANCISCO ENTILA and ERLINDA ENTILA, husband and wife, and the marital community composed thereof, | ) ) ) ) | No. 92581-0 |
| Respondents, | ) ) ) | |
| v. | ) ) | En Banc |
| GERALD COOK and JANE DOE COOK, husband and wife and the marital community composed thereof, | ) ) ) ) ) | |
| Petitioners. | ) ) ) | Filed    JAN 1 2 2017 |

JOHNSON, J.— This case involves the scope of the immunity provisions of the Industrial Insurance Act (IIA), Title 51 RCW, as applied to a third party tort action against another employee when the accident occurred after working hours, but where the injured plaintiff qualified for benefits under the act. The trial court dismissed the suit on summary judgment, holding the act applied to bar suit. The Court of Appeals reversed, holding that immunity did not apply because the alleged coemployee tortfeasor was not acting in the scope and course of employment. *Entila v. Cook*, 190 Wn. App. 477, 486, 360 P.3d 870 (2015), *review granted*, 185 Wn.2d 1017, 369 P.3d 500 (2016). The court also reversed the trial

court's consideration of an injured plaintiff's receipt of IIA benefits in determining immunity. We affirm the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

Gerald Cook and Francisco Entila were both employees of the Boeing Company. On February 18, 2010, at approximately 6:30 a.m., Cook finished work and walked to his vehicle in an employee parking lot. He was driving his personal vehicle out of the lot and onto a Boeing access road. The access road is located on Boeing's property, and it is maintained by Boeing. As Entila walked across the access road, Cook struck and injured him. Entila received workers' compensation benefits for his injuries and filed suit against Cook for negligence.

Entila sought a pretrial ruling to establish that the IIA did not bar his suit against Cook. The trial court denied his motion. Cook then moved for summary judgment, arguing that he was immune from suit under the IIA because there was no genuine issue of material fact that he was acting in the course of employment and that Boeing's employer immunity shielded him from liability. The trial court granted his motion and dismissed the lawsuit. Entila sought direct review in this court, which we transferred to the Court of Appeals. The Court of Appeals reversed the trial court and held that Cook was not immune under the IIA because

he did not establish that he was acting in both the scope and course of employment. *Entila*, 190 Wn. App. at 486.

## ANALYSIS

This case requires a statutory analysis to determine the scope of coemployee tort immunity. A trial court's summary judgment ruling is reviewed de novo. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). In this case, no genuine issue of material fact exists and the trial court's ruling was based on the interpretation of a statutory provision, which we also review de novo. *State v. Azpitarte*, 140 Wn.2d 138, 140-41, 995 P.2d 31 (2000).

Cook asserts that RCW 51.08.013 determines coemployee immunity—if he or she was "acting in the course of employment," immunity exists. RCW 51.08.013(1) states:

> 'Acting in the course of employment' means the worker acting at his or her employer's direction or in the furtherance of his or her employer's business which shall include time spent going to and from work on the jobsite, as defined in RCW 51.32.015 and 51.36.040, insofar as such time is immediate to the actual time that the worker is engaged in the work process in areas controlled by his or her employer, except parking area. It is not necessary that at the time an injury is sustained by a worker he or she is doing the work on which his or her compensation is based or that the event is within the time limits on which industrial insurance or medical aid premiums or assessments are paid.

3

Cook reasons that since he was going to and from work on the jobsite, immunity bars the suit. Entila contends, however, that for immunity to exist and bar the suit, Cook must demonstrate that he was performing work for Boeing at the time of injury. Entila relies on RCW 51.24.030(1), which states:

> If a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury for which benefits and compensation are provided under this title, the injured worker or beneficiary may elect to seek damages from the third person.

The IIA provides workers' compensation benefits to "[e]ach worker injured in the course of his or her employment" while immunizing the employer from responsibility. RCW 51.32.010; *see Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 422, 869 P.2d 14 (1994). RCW 51.08.013 then establishes employer immunity and defines "acting in the course of employment." Under this definition, a worker is eligible for workers' compensation benefits not only when they are "on the clock," it also encompasses the time going to and from work on the jobsite controlled by an employer immediately before and after the actual working period. RCW 51.08.013. The term "jobsite" is defined as "premises as are occupied, used or contracted for by the employer for the business or work process in which the employer is then engaged." RCW 51.32.015. These statutory provisions

4

demonstrate that benefit eligibility and employer immunity are analytically tied—if an injured worker qualifies for benefits, the employer cannot be sued.

Although RCW 51.08.013 establishes benefit eligibility and employer immunity, it does not control third party immunity, which is the issue this case presents. Instead, third party immunity is guided by a different statutory provision—RCW 51.24.030. When an injured person brings a personal injury action, the third party tortfeasor is not eligible for statutory immunity unless they are in the "same employ" as their coworker. RCW 51.24.030(1). Thus, the issue in this case centers on whether Cook and Entila were in the "same employ" at the time of injury.

Not only do the statutory sections use different language, they serve different purposes. When analyzing the statutory eligibility for benefits, our cases recognize the requirement to analyze the provisions in favor of the injured worker. RCW 51.08.013 itself expands benefit eligibility beyond those injuries that occur while working, also encompassing injuries occurring while going to and from work. RCW 51.24.030, on the other hand, deals with third party liability and has different objectives. In *Evans v. Thompson*, 124 Wn.2d 435, 437, 879 P.2d 938 (1994), we recognized that the statutory scheme under RCW 51.24.030 favors third party actions and that contrary to the principle or interpretation benefiting the

injured worker, immunity from liability requires a narrow interpretation, with the burden on the party claiming immunity to establish its existence.

In interpreting RCW 51.24.030(1), Washington courts have previously confronted the question of whether coemployees are in the "same employ." In *Olson v. Stern*, 65 Wn.2d 871, 877, 400 P.2d 305 (1965), this court decided that coemployees are not in the same employ and are thus not entitled to immunity unless it is shown they were acting "'in the course of employment.'" There, the tortfeasor and injured party were coemployees when their vehicles collided after the working shift in a parking area. Stern, the tortfeasor, was on his way home. We held that Stern was not immune from suit for two reasons: (1) the parking lot was not covered by RCW 51.08.013 and (2) "he was neither 'acting at his employer's direction' nor 'in the furtherance of his employer's business'"—Stern had finished his day's work, he completed his tasks for the day, and he was driving home. *Olson*, 65 Wn.2d at 877. Although we discussed the statutory definition of "in the course of employment," the analysis focused on whether Stern was still performing duties for his employer. This focus suggests the result was not dependent on whether the injured worker qualified for benefits, but also hinged on whether the tortfeasor was doing work at the time of the accident.

6

In *Taylor v. Cady*, 18 Wn. App. 204, 206, 566 P.2d 987 (1977), the Court of Appeals also analyzed when coemployees are in the "same employ." The court explained that a coemployee is entitled to immunity where they are performing work for their employer at the time of injury. There, an employee, Cady, left his office, intending to make a bank deposit for his employer while he was on his way home. Cady started his car in the employee parking lot, but he was called back to the office. Cady left his car running, and it rolled backward, injuring another employee. The court determined that the tortfeasor was still acting in the course of employment because he was carrying out the duties of his employer—leaving the office to make a bank deposit. In reaching this conclusion, the court interpreted *Olson* and believed the *Olson* court rejected immunity because Stern was not doing work for his employer, not because the collision occurred in a parking lot. Using this interpretation, the court in *Taylor* focused on whether Cady was performing duties for his employer and found, under those circumstances, that acting under the employer's direction barred the third party claim.

Another Court of Appeals case had a different interpretation of *Olson*. The court in *Heim v. Longview Fibre Co.*, 41 Wn. App. 745, 748, 707 P.2d 689 (1985), reasons that Stern was immune solely because he was in a parking area, rejecting *Taylor*'s interpretation:

We believe that the trial court and respondent have incorrectly construed the ruling in *Olson*. There is some support for their reading of *Olson* in *Taylor v. Cady*, 18 Wn. App. 204, 566 P.2d 987 (1977), which interpreted *Olson* as restricting the definition of "course of employment." However, we believe that the better view of *Olson* is that the worker was not covered because the accident occurred in a "parking area," and, therefore, under the express provision of RCW 51.08.013, there was no coverage, despite the fact that he may still have been on the jobsite while leaving work. In other words, but for the express parking area exception, the worker in *Olson* would have had coverage because he was acting in the course of employment while on the employer's premises under the "going and coming" rule.

However, the court in *Heim* confused the issue in *Olson*. The issue was not whether Olson was eligible for workers' compensation benefits under the IIA, but whether Stern was entitled to third party immunity. Furthermore, the analysis in *Heim* is not determinative of the issue before this court; *Heim* addresses an injured party's eligibility for workers' compensation benefits, not a tortfeasor's eligibility for third party immunity.

Most recently, this court has determined that workers are in the same employ where the tortfeasor can show (1) he had the same employer as the injured person and (2) he was acting in the "scope and course of his or her employment" at the time of injury. *Evans*, 124 Wn.2d at 444. We adopted the "scope and course" requirement as the statutory standard under RCW 51.24.030 for determining coemployee immunity. The analysis focuses on whether the third party defendant could establish that he was performing duties for his employer. Thus, under this

8

standard, in order to be shielded from liability, the alleged tortfeasor employee would have to show he or she was doing work or acting at the direction of his or her employer.

RCW 51.24.030 requires that a third party tortfeasor must demonstrate he or she was in both the scope and course of employment. *Evans* articulated "scope and course" as the standard for determining immunity and, as discussed above, other cases have used a similar analysis—analyzing whether an employee was performing duties for his or her employer. *Evans*, 124 Wn.2d at 444 (determining there was a genuine question of material fact as to the husband's immunity because he did not show his actual duties to the corporation or to the particular event); *Olson*, 65 Wn.2d at 877 (holding that the tortfeasor was not entitled to immunity for two reasons: (1) the parking lot was not covered by worker's compensation statutes and (2) "he was neither 'acting at his employer's direction' nor 'in the furtherance of his employer's business'"—the employee had finished his day's work, he completed his tasks for the day, and he was driving home (quoting RCW 51.08.013)); *Taylor*, 18 Wn. App. at 207-08 (concluding the tortfeasor was still acting in the course of employment because he was carrying out the duties of his employer—starting the car to leave the office and make a bank deposit—despite

the injury falling with the parking lot exception of RCW 51.08.013).[1] To the extent any confusion exists in our prior cases, RCW 51.24.030 and RCW 51.08.013 require two separate analyses; RCW 51.24.030 guides third party immunity and requires a third party tortfeasor to demonstrate he or she was doing work for the employer at the time of injury.

Both the legislature and this court's strong policy favoring third party actions support this interpretation of RCW 51.24.030 here. In *Evans*, we recognized that third party actions are preferred in order for the Department of Labor and Industries (Department) to recoup benefits paid to the worker. 124 Wn.2d at 437. Most recently, we reaffirmed this reasoning in *Michaels v. CH2M Hill, Inc.*, recognizing that the tortfeasor does not pay into the industrial insurance fund, thus, "'we will, in all doubtful cases, sustain the right of the injured workman against the third party wrongdoer.'" 171 Wn.2d 587, 599, 257 P.3d 532 (2011) (quoting *Mathewson v. Olmstead*, 126 Wash. 269, 273, 218 P. 226 (1923)).

---

[1] Amicus Washington State Association for Justice Foundation (WSAJF) articulates this analysis by applying similar common law principles. The "scope" prong of the *Evans* standard is similar to "whether [a] coworker's conduct would subject his or her employer to vicarious liability. . . . This inquiry focuses on whether the worker was actually within the scope of employment under the circumstances, in furtherance of the employer's business." Br. of Amicus Curiae WSAJF at 4. As WSAJF noted, this analysis is much narrower than the statutory definition of "acting in the course of employment." Thus, the scope prong of this analysis would reign in a broad statutory definition that was intended to apply to workers seeking compensation benefits; an immunity analysis is much more limited.

Applying RCW 51.08.013's broad analysis would allow tortfeasors immunity merely because they are located on the jobsite. Immunity would be available in most cases, and third party actions would be an uncommon occurrence. This is simply inconsistent with the legislature's and this court's long held policy that "the right to sue a third party tortfeasor is a 'valuable right to the workman.'" *Michaels*, 171 Wn.2d at 599 (quoting *Burns v. Johns*, 125 Wash. 387, 392, 216 P. 2 (1923)). Instead, a tortfeasor must satisfy a much more narrow analysis and demonstrate he or she was in both the scope and course of employment. This narrow reading of RCW 51.24.030(1)'s "same employ" language implements the statutory policy favoring third party actions favorable not only to the worker, but also the Department and self-insured employer.

On appeal, Entila also argued that RCW 51.24.100 barred the trial court from considering his receipt of benefits in determining Cook's immunity. The Court of Appeals agreed. The statute provides:

> The fact that the injured worker or beneficiary is entitled to compensation under this title *shall not be pleaded or admissible in evidence in any third party action under this chapter.* Any challenge of the right to bring such action shall be made by supplemental pleadings only and shall be decided by the court as a matter of law.

RCW 51.24.100 (emphasis added). Here, the statute is unambiguous that an employees' receipt of benefits is inadmissible in a third party action. Thus, the trial

court erred by using Entila's receipt of benefits when determining Cook's immunity.

Cook argues that *Orris v. Lingley*, 172 Wn. App. 61, 288 P.3d 1159 (2012), supports the proposition that IIA benefits are considered in a determination of immunity. However, as the Court of Appeals correctly notes, the *Orris* court "considered this evidence to decide the threshold question of whether the exclusive remedy provisions of the IIA applied to Orris." *Entila*, 190 Wn. App. at 487. The court looked at whether "an injured employee who has received benefits may sue a negligent coemployee when *the injured employee* was acting outside the course of employment." *Orris*, 172 Wn. App. at 69-70. This analysis is entirely distinct from the analysis our current case presents. Here, the analysis hinges on whether Cook, the tortfeasor, was acting in the scope and course of employment. Because the court in *Orris* was not determining coemployee immunity under RCW 51.24.030, Cook's argument is unpersuasive. The language of the RCW is clear—an employee's receipt of workers' compensation benefits plays no role in determining third party immunity.

We affirm the Court of Appeals' decision and remand to the trial court.

_____

WE CONCUR:

_____        _____

_____        _____

_____        _____

_____        _____